[Civ. No. 10973. Fourth Dist., Div. Two. May 11, 1971.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF ORANGE COUNTY, Respondent;
JERRY DEAN MARTIN et al., Real Parties in Interest.

448

## COUNSEL

Cecil Hicks, District Attorney, and Oretta D. Sears, Deputy District Attorney, for Petitioner.

No appearance for Respondent.

Lawrence Buckley for Real Parties in Interest.

## OPINION

**KERRIGAN, Acting P. J.**—On August 17, 1970, a complaint was filed in the municipal court charging Jerry Dean Martin and Linda Lou Martin (real parties in interest and hereinafter designated as "defendants") with possession of marijuana (Health & Saf. Code, § 11530), possession of marijuana for purpose of sale (Health & Saf. Code, § 11530.5), possession of a narcotic device (Health & Saf. Code, § 11555), and possession of restricted dangerous drugs (Health & Saf. Code, § 11910).

Defendants moved for suppression of the evidence seized by police in the execution of a valid search warrant issued on August 14, 1970. Following a formal hearing, the magistrate found that while certain items of contraband (a small quantity of marijuana and illegal drugs and several narcotic devices) were observed by the officers in plain sight at the time the search warrant was executed, that nevertheless their seizure was improper as being beyond the scope of the warrant. However, the defendants were held to answer on the charges involving the contraband which was described in the warrant (1½ lb. packet of hashish) and which was seized pursuant thereto.

Following the filing of an information in the superior court reiterating the aforesaid four counts, the prosecution requested a special hearing to relitigate the issue as to the validity of the search. A de novo hearing was held. (See Pen. Code, § 1538.5, subd. (j).) It was stipulated that the search warrant had been validly issued and it was introduced in evidence. The

Fullerton police officer executing the warrant testified for the prosecution. The superior court also ruled that all of the evidence seized at the time of the execution of the warrant, with the exception of the contraband described in the warrant (1½ lbs. of hashish) should be suppressed, and entered its order accordingly. The prosecution [petitioner] sought mandamus and this court issued an alternative writ for the purpose of determining the integrity of the order suppressing evidence.

On August 15, 1970, a local police officer, a customs official, and narcotics agents went to the defendants' Fullerton residence to serve a search warrant ordering the seizure of a package containing 1½ pounds of hashish which had been delivered to the residence by mail a little earlier the same day. The residence consisted of a one-story duplex with a detached two-car garage. The hashish was described as being wrapped in a brown cardboard candy box, addressed to a Miss Jane Cromwell. The package had been sent to Fullerton from London, England. It had been intercepted and examined by a customs agent, who relayed the information to the appropriate local and state agencies. Although the package was addressed to Miss Cromwell, the postman informed the officers immediately after delivery that the defendant Linda Martin had signed the receipt for the same.

Upon arrival at the residence, the officers knocked on the door and the defendant Linda Martin answered. The officers stated their purpose, showed her the original warrant, handed her a copy, and were granted permission to enter. Once inside the home, the officers saw three hashish pipes on a bookcase in the hall approximately ten feet away from the entrance. Not being sure what other persons or occupants might be present in the residence, since the package had been addressed to a person other than the recipient, the officers went through all the other rooms. In the first bedroom, the officers saw two pipes and a bag containing hashish. In the second bedroom, another hashish pipe was observed. These items were in plain sight.

Finding no one else inside the home, the officers informed the defendant that they were looking for a 1½-pound package of hashish. The Fullerton officer asked her if she would give it to him. She replied that the package was in the garage and led them there.

Upon entering the garage and while proceeding to where the package was located, the officers observed a jar of marijuana seeds and some capsules. The officers seized the jar containing the seeds and pills as well as the unopened package of hashish. The officers then returned to the house and took possession of the other items of contraband previously observed in the hallway and in the bedrooms.

■ The superior court held, as a matter of law, that the officers did not have a right to enter the home prior to asking the occupant whether she was willing to turn over the contraband described in the warrant, nor did the officers have the right to seize any contraband not described in the warrant. In effect, the court rationalized that had the officers asked the woman occupant for the package they wanted, she would have taken them to the garage and they would not have had to enter the residence at all. Consequently, the court concluded the officers did not have a right to be in the home where they saw the contraband in plain sight.

First, the validity of the search warrant is not in question. Second, the officers fully complied with the statutory "knock-and-notice" requirements for execution of a search warrant. (Pen. Code, § 1531.) Consequently, the only issue is whether the officers exceeded the legitimate scope of the search authorized by the warrant.

■ The test of the propriety of a search is whether it is reasonable. (U.S. Const., 4th Amend.) Ordinarily, when a search is made pursuant to a warrant, the search and seizure are limited by the terms of the warrant; only the premises described in the warrant may be searched and only the property described in the warrant may be seized; however, when officers, in the course of a bona fide effort to execute a valid search warrant, discover articles which, although not included in the warrant, are reasonably identifiable as contraband, they may seize them, whether they are initially in plain sight or come into plain sight subsequently as a result of the officers' efforts. (*Skelton* v. *Superior Court,* 1 Cal.3d 144, 155, 157 [81 Cal.Rptr. 613, 460 P.2d 485].)

■ There is no requirement in the law that officers executing a search warrant first request the occupant to direct them to the item or items described in the warrant. Such a requirement would be based on the assumption that those who possess contraband are always cooperative and are always truthful. As the district attorney indicates, neither assumption is valid. ■ In executing the warrant herein, the officers were justified in entering the house, searching it for the contraband described in the warrant, and seizing all contraband in open view.

■ Finally, officers executing a search warrant for narcotics are also justified in searching the premises described in the warrant for suspects as well as contraband. (*Guevara* v. *Superior Court,* 7 Cal.App.3d 531, 535 [86 Cal.Rptr. 657].) ■ The evidence reflects that the officers in this case acted with propriety in assuming that other suspects might be in the home inasmuch as the mailman informed the officers just prior to their entry that the package was addressed to a third person, Jane Cromwell, but

that one of the defendants signed for it. It was not unreasonable for them to walk through the house to determine if Miss Cromwell was present. Such an investigation is not the kind of excessive invasion of privacy that *Chimel* v. *California,* 395 U.S. 752 [23 L.Ed.2d 685, 89 S.Ct. 2034] was designed to prevent; it is merely basic police investigation of information received. (*Guevara* v. *Superior Court, supra.*)

Let a peremptory writ of mandate issue directing the superior court to vacate its order suppressing evidence; the alternative writ of mandate is discharged.

Tamura, J., concurred.